UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| EVA ETHERTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. | Case No.: 5:17-cv-01155-JHE |

**MEMORANDUM OPINION**[1]

Plaintiff Eva Etherton ("Etherton") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Etherton timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED** and this action is **REMANDED** for further proceedings.

**I. Factual and Procedural History**

Etherton protectively filed her application for a period of disability, DIB, and SSI on April 21, 2014, alleging an onset date of April 20, 2014. (Tr. 125-26). The Commissioner initially

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

denied Etherton's application on August 4, 2014, (tr. 71-75), and on August 15, 2014, Etherton requested a hearing before an ALJ. (Tr. 79-80).

### A. Etherton's Attempts to Expedite the Hearing

On May 7, 2015, Etherton's attorney, Abigail Herrin Clarkson ("Clarkson"), submitted a dire need request — essentially, a request for an expedited hearing — pursuant to HALLEX I-2-1-94.[2] (Tr. 85-90). In support, Clarkson cited Etherton's lack of income and the poor health of Etherton's mother. (Tr. 85). Because of the costs of Etherton's mother's medications, Clarkson stated Etherton was going without essential medications, including medications for her diabetes and blood pressure.[3] (*Id.*). On June 30, 2015, the Florence, Alabama Officer of Disability Adjudication and Review ("ODAR") denied the request with no explanation. (Tr. 91). Clarkson contacted ODAR and was informed the request had been denied because Etherton had collected unemployment benefits approximately ten months prior to the date of the request. (Tr. 232).

Following ODAR's explanation, Clarkson contacted the Social Security Administration's Officer of General Counsel ("OGC"), alleging the ALJ in this case, Cynthia G. Weaver ("ALJ Weaver"), had failed to adhere to the HALLEX rules for dire need. (Tr. 233). Clarkson enclosed a draft complaint, to be filed in this court against ALJ Weaver, in the nature of a petition for a writ of mandamus. (*See* tr. 238-48). OGC asked Clarkson to refrain from filing the complaint until it completed its investigation. (Tr. 233).

---

[2] HALLEX — formally, the "Hearings, Appeals, and Litigation Law Manual" — is the internal appeals manual used by the Social Security Administration. *See* Timothy H. Gray, *Manual Override? Accardi, Skidmore, and the Legal Effect of the Social Security Administration's HALLEX Manual*, 114 Colum. L. Rev. 949, 950 (2014).

[3] According to HALLEX I-2-1-40, "a dire need situation exists when a claimant alleges[, *inter alia*,] [t]he claimant lacks medicine or medical care and is unable to obtain it, or the claimant indicates that access to necessary medical care is restricted because of a lack of resources."

2

On February 29, 2016, Etherton submitted a second dire need request, asserting her financial situation had worsened due to the death of her mother. (Tr. 92). Etherton also stated her son, who lived in her house in the same financial situation, had also filed a dire need request, which the Florence ODAR had granted. (*Id.*). A week later, the Florence ODAR contacted Clarkson and informed her ALJ Weaver had reviewed the dire need request, offering to set the hearing for the following morning in Cullman, Alabama. (Tr. 93). However, Clarkson had hearings that day in Dothan, Alabama, and informed ODAR she was not available and did not believe Etherton could drive that far. (*Id.*).

ODAR set Etherton's hearing for April 19, 2016. (Tr. 94). The investigation into ALJ Weaver continued, and Clarkson remained in contact with Stephanie C. Johnson ("Johnson"), Assistant Regional Counsel for OGC. Etherton alleges Clarkson raised the issue of ALJ Weaver's potential bias during phone calls and in emails. (Doc. 11 at 3-4). On March 9, 2016, Johnson sent an email to Clarkson indicating ODAR had changed the way it responded to dire need requests and that, as to Etherton, the issue was moot; the hearing was already scheduled. (Doc. 1-1). Johnson informed Clarkson she could seek to disqualify ALJ Weaver through the procedures outlined in 20 C.F.R. §§ 404.940, 416.1440, and HALLEX I-2-1-60.C. (*Id.*).

### B. The Hearing and Its Aftermath

On April 19, 2016, ALJ Weaver held Etherton's hearing in Huntsville, Alabama. (Tr. 31-49). Etherton characterizes the hearing as "adversarial." (Doc. 11 at 5). The following day, Etherton submitted a post-hearing memorandum alleging bias by ALJ Weaver and requesting ALJ Weaver recuse herself from the case. (Tr. 225-27). By written order, ALJ Weaver denied this request on May 27, 2016. (Tr. 228-31).

3

On June 2, 2016, ALJ Weaver denied Etherton's claim. (Tr. 14-24). Eleven days later, Clarkson filed another OGC complaint against ALJ Weaver. (Tr. 232-48). This complaint was still pending when Etherton sought review by the Appeals Council on June 24, 2016. (Tr. 124). On April 18, 2017, Branch Chief Joy M. Bryan at the Social Security Administration's Office of Executive Operations and Human Resources, Division of Quality Services, sent Clarkson a letter indicating that "[t]he appropriate SSA officials have looked into your allegations [of bias] and have finished the investigation of the issues that you raised. However, we are unable to reveal further information about our investigation because of privacy concerns." (Doc. 11-2).

On May 17, 2017, the Appeals Council denied review, finding "the Administrative Law Judge did not abuse his or her discretion and none of the other reasons in our rules existed to review your case." (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On July 11, 2017, Etherton initiated this action. (Doc. 1).

## II. Standard of Review[4]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

---

[4] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

4

(11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Etherton met the insured status requirements of the Social Security Act through December 31, 2018, and that Etherton had not engaged in substantial gainful activity ("SGA") since April 20, 2014, the alleged onset date. (Tr. 19). At Step Two, the ALJ found Etherton has the severe impairments of degenerative disc disease and obesity. (*Id.*). At Step Three, the ALJ found Etherton does not have an impairment or combination of impairments that

6

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to Step Four, the ALJ determined Etherton's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Etherton has the RFC

> to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasionally kneeling, crouching, crawling, and climbing ramps and stairs; she is limited to frequently balancing and stooping; she is limited to occupations which do not require climbing ropes, ladders, or scaffolds; she must avoid moderate vibration; and she must avoid unprotected heights.

(Tr. 20).

At Step Four, the ALJ determined Etherton is able to perform past relevant work as a cashier. (Tr. 23). Therefore, the ALJ did not proceed to step five, instead determining Etherton has not been under a disability and denying her claim. (Tr. 24).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Etherton raises three challenges to the Commissioner's decision: (1) she was denied a full and fair hearing due to ALJ Weaver's bias; (2) remand under Sentence Six (or, alternatively, leave

7

to pursue discovery) is required in this case due to the fact the record does not contain documents related to the OGC investigation and threatened mandamus; and (3) the ALJ erred in finding Etherton's past work as a cashier is past relevant work.

**A. Etherton Received a Full and Fair Hearing**

A claimant is entitled to a hearing that is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation omitted). This principle is embodied in the Social Security Administration's regulations, which require an ALJ to recuse herself from a hearing "if . . . she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.

The court starts from the presumption that an ALJ is unbiased and acts with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," and the burden to do so is on the party asserting bias. *McClure*, 456 U.S. at 195. Specifically, the party must show convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow*, 421 U.S. at 47. "[J]udicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses . . . [which] neither (1) rel[y] upon knowledge acquired outside [the] proceedings nor (2) display[] deep-seated and unequivocal antagonism that would render fair judgment impossible," are inadequate to require disqualification. *Liteky v. United States*, 510 U.S. 540, 556 (1994).

Etherton's allegations of bias are rooted in the fact she "threatened to mandamus ALJ Weaver while her appeal was pending" and the OGC investigation that followed. (Doc. 11 at 10). Based on this, she concludes "it follows that such scrutiny . . . would anger ALJ Weaver to the

point of bias." (*Id.* at 10-11). This is not a reasonable inference. First, Etherton cites no law to support her argument. Second, as a matter of common sense, almost every judge's actions are subject to review by a higher court, and the mere fact that a litigant seeks that review — even through an extraordinary measure like an application for a writ of mandamus — cannot be expected, of itself, to uniformly provoke judicial rage, much less the blind rage that Etherton presumes. Third, and most importantly, courts in the Eleventh Circuit have generally rejected that a claimant's complaints of misconduct, even in multiples, are sufficient to create the type of bias that renders a hearing unfair. *See, e.g., Jarrett v. Comm'r of Soc. Sec.*, No. 6:09-CV-793ORL31DAB, 2010 WL 2696413, at *3 (M.D. Fla. June 1, 2010), *report and recommendation adopted,* No. 609-CV-793-ORL-31DAB, 2010 WL 2696168 (M.D. Fla. July 6, 2010), *aff'd,* 422 F. App'x 869 (11th Cir. 2011); *Moise K.E.F. v. Comm'r of Soc. Sec.*, No. 608CV1701ORL31DAB, 2010 WL 11596243, at *1 (M.D. Fla. Feb. 22, 2010), *aff'd sub nom. Moise ex rel. Franklin v. Comm'r Of Soc. Sec.*, 404 F. App'x 424 (11th Cir. 2010); *Wood v. Berryhill*, No. 6:15-CV-1487-ORL-DNF, 2017 WL 4161665, at *8 (M.D. Fla. Sept. 20, 2017).

This does not end the inquiry, though, because Etherton points to some conduct by ALJ Weaver she says shows her bias: her questioning of Etherton at the hearing and her response to Etherton's post-hearing brief requesting recusal.[6] As to its tone, ALJ Weaver's questioning was somewhat more pointed than usual, but that does not appear to have impacted the fairness of the

---

[6] Inexplicably, the Commissioner contends Etherton challenges "the ALJ's decision to pursue questions about her need requests for medical records." (Doc. 12 at 5). She contends "[the ALJ's statements merely reflect her understandable frustration with the failure of Plaintiff's attorney to obtain medical records that allegedly supported her claim, the attorney's unwillingness to pay a hospital's copying fees, the attorney's expectation that the ALJ should obtain the records, and the expense and delay caused by the attorney's actions." (*Id.* at 5-6). As Etherton notes, (doc. 15 at 1-2), none of this relates to the allegations in this case.

hearing. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original). To the extent ALJ Weaver's questioning was sharp, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias. *Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 794 (11th Cir. 2016) (quoting *Liteky*, 510 U.S. at 555). *See also Dube v. Astrue*, No. 3:09CV99/LAC/EMT, 2010 WL 1257651, at *14 (N.D. Fla. Feb. 25, 2010), *report and recommendation adopted,* No. 3:09CV99/LAC/EMT, 2010 WL 1257650 (N.D. Fla. Mar. 26, 2010) ("needlessly abrupt" questioning by ALJ, while not condoned by the court, does not warrant reversal); *Swann v. Astrue*, No. 3:07CV129/LAC/EMT, 2008 WL 818500, at *13 n.8 (N.D. Fla. Mar. 26, 2008) (ALJ's "rhetorical questions, debates, and sarcasm" did not require reversal).

The content of ALJ Weaver's questioning is a somewhat closer call. Etherton alleges "nearly 40% of ALJ Weaver's questions related to Etherton's moot dire need requests." (Doc. 11 at 11). Etherton appears to be lumping together all of ALJ Weaver's questions about her past financial situation. However, as ALJ Weaver noted in her decision, Etherton's allegations she was unable to afford healthcare are directly related to the issue of her past failure to seek treatment for her claimed impairments. (Tr. 21-22). Questioning about an issue that is relevant to an issue that required further exploration is not indicative of bias. Nor is the fact that Etherton's son was "referenced in the dire needs request," (doc. 11 at 5), a basis to conclude ALJ Weaver's questions about him were improper. Etherton speculates the ALJ Weaver was distracted by looking at

10

Etherton's son's disability case, rather than paying attention to Etherton's testimony. The sole basis for this is an interjection into Etherton's testimony, between questions from Etherton's counsel, in which ALJ Weaver asked Etherton how to spell her son's name. (Tr. 42). Regardless of her distraction at the hearing, ALJ Weaver specifically referenced the testimony both before and after this interjection in her decision. (Tr. 21).

That said, in addition to noting the matters are "material to the underlying case," ALJ Weaver's post-hearing order explicitly tied this questioning to her inquiry into Clarkson's conduct in filing the dire need requests. In that order, ALJ Weaver pointed out a number of statements in the requests which were unsupported by the evidence at the hearing, including that Etherton had no income since April 2014, (tr. 229), that Etherton had been diagnosed with diabetes, (*id.*), that Etherton had no household income since her mother died, (tr. 229-30), and that Etherton's financial situation had worsened since the first dire need request, (tr. 230). She also stated Clarkson's letter indicating Etherton was "in identical financial shape as her son" rendered Etherton's son's request for benefits "an additional subject for inquiry." (*Id.*). According to the order, ALJ Weaver's rationale for examining these matters at the hearing was to "seek the truth, and act in accordance with the laws and regulations that govern these proceedings . . . includ[ing] verification of written evidence submitted by the representative which appears to be false or misleading, as was found in this case and is detailed above[,]" in violation of Clarkson's duties under 20 C.F.R. 416.1540. (*Id.*). ALJ Weaver goes on to note, however, that "[t]he determination of the claimant's entitlement to benefits is completely separate from the matters concerned in this Order. There is no evidence in the file or any other indication that the claimant herself has made any statements or presented any evidence which was false or intended to be misleading." (Tr. 230-31).

11

Etherton does not rebut that there are conflicts between the dire needs requests and her testimony at the hearing. Instead, she simply assumes that probing these inconsistencies is beyond the bounds of what an ALJ may do at a hearing, and thus indicates bias. She cites no law to support this. However, consistent with ALJ Weaver's order, 20 C.F.R. § 415.1540(c)(3) specifically prohibits a representative from "[m]ak[ing] or present[ing], or participat[ing] in the making or presentation of, false or misleading oral or written statements, evidence, assertions, or representations about a material fact or law concerning a matter within our jurisdiction, in matters where the representative knows or should have known that those statements, evidence, assertions or representations are false or misleading." While some of the matters explored by ALJ Weaver seem somewhat tangential to the question of benefits, they are directly relevant to ALJ Weaver's exploration of whether Clarkson conducted herself in accordance with this prohibition. Further, Etherton has not demonstrated ALJ Weaver's questioning at the hearing was to the exclusion of her duty to fully and fairly develop the record. *Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 935-36 (11th Cir. 2017). And while ALJ Weaver's order directly accuses Clarkson of making false or misleading statements, it is notable the order was essentially a defense of her actions at the hearing after Etherton called them into question. There is no indication ALJ Weaver's accusations had any effect on her resolution of the case, especially when (1) ALJ Weaver's order explicitly divorces Clarkson's alleged misconduct from the consideration of whether Etherton is entitled to benefits, (tr. 230-31), and (2) ALJ Weaver's decision analyzes the evidence in the case, without regard to Clarkson's alleged misconduct, (*see* tr. 19-24). *See Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005) (holding ALJ's statements in decision attributing misconduct to claimant's counsel "not so extreme as to show that the ALJ could not render a fair judgment" in light of the

12

decision's thorough exploration of the evidence in the case). Although it is understandable Clarkson may feel her integrity was unfairly challenged, this does not amount to a showing of bias.

Finally, this case is readily distinguishable from *Miles v. Chater*, *supra*, the paradigmatic Eleventh Circuit case in which bias alone required remand to a different ALJ. In *Miles*, the ALJ's decision contained the observation that a physician who examined the claimant at her attorney's request "almost invariably conclude[d]" claimants represented by the attorney were totally disabled. *Miles*, 84 F.3d at 1399. No record evidence supported that assertion. *Id.* at 1399-1400. Although the district court found no precedent required reversal, the Eleventh Circuit concluded the statements compromised the ALJ's impartiality and his obligation to give "individualized consideration to each claim that comes before him." *Id.* at 1400-01. In this case, by contrast, there is no indication ALJ Weaver relied on anything external — for example, a notion conceived prior to this case about Etherton, Clarkson, or the evidence — to support her decision. On this record, Clarkson has not overcome the presumption of impartiality, and remand is not warranted based on ALJ Weaver's alleged bias.

### B. Neither Sentence Six Remand nor Discovery is Warranted[7]

In the alternative to her argument remand is required due to ALJ Weaver's bias, Etherton contends remand under sentence six and/or discovery is necessary in this case. Her only basis for this is that the Appeals Council reviewed a record that did not contain documents related to the OIG investigation and threatened mandamus. (Doc. 11).

---

[7] Notably, Etherton does not appear to allege the Appeals Council erred in failing to find bias in its review of the ALJ's decision. To the extent she does, the Appeals Council specifically noted Etherton's allegations of bias and found ALJ Weaver did not abuse her discretion, the standard under which it assesses allegations of bias. (Tr. 2). It did not err in its review. *See Moise ex rel. Franklin v. Comm'r Of Soc. Sec.*, 404 F. App'x 424, 426 (11th Cir. 2010).

When a claimant presents new evidence in the district court, a court may remand an application for benefits under sentence six of 42 U.S.C. § 405(g) if the claimant shows the evidence "is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007) (citing 42 U.S.C. § 405(g)). Evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). It is undisputed the evidence Etherton presents and now wishes the Commissioner to consider — the email from Johnson and the OGC determination — is not part of the record. However, neither document is material because, as discussed above, neither the investigation nor the threatened mandamus could show ALJ Weaver's bias. Sentence six remand is unwarranted.

Nor would discovery be appropriate in this case. The object of Etherton's proposed discovery is "**all** of the information relating to [the Commissioner's] investigation of ALJ Weaver and the subsequent OGC investigation stemming therefrom . . . [as well as] all of the information relating to Etherton's second OGC complaint against ALJ Weaver . . . ." (Doc. 11 at 14) (emphasis in original). None of this information would support Etherton's allegations of bias. Consequently, her alternative request for discovery is denied.

### C. The ALJ's Determination Etherton's Cashier Work Is Past Relevant Work Was Not Supported by Substantial Evidence

Finally, Etherton challenges the Commissioner's determination her work as a Dollar General cashier was past relevant work.

Under 20 C.F.R. § 404.1560(b)(1), past relevant work is "work that you have done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." "In evaluating work activity for substantial gainful activity purposes, the primary

consideration is the claimant's earnings from work activity." *Green v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 906, 908 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1574(a)(1); 416.974(a)(1); SSR 83–33). "The ALJ ordinarily will consider that the claimant either was or was not engaged in substantial gainful activity if her average monthly earnings are above or below a certain amount established by the Social Security Administration's earnings guidelines," which creates a presumption of SGA. *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014). However, earnings are not dispositive, and even when the claimant earns below the amount established by the guidelines the ALJ may consider other evidence "including whether the work performed was 'comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work.'" *Id.* (citing 20 C.F.R. §§ 404.1574(a)(1), (b)(3)(ii)(A), 416.974(a)(1) (b)(3)(ii)(A)).

Etherton argues her earnings at Dollar General did not rise to the level of SGA, and she calculates her average monthly earnings at $550.31 per month in 2002 (a year in which SGA was $780 per month) and $722.92 per month in 2003 (a year in which SGA was $800 per month). (Doc. 11 at 19). This appears consistent with the record, (*see* tr. 48, 162, 164, 201), and with the regulations, *see* 20 C.F.R. § 404.1574(b)(2)(ii). The Commissioner does not dispute this calculation.

The Commissioner contends, in general terms, the ALJ properly considered the testimony of the vocational expert ("VE") and Etherton's reported hours worked and income to determine the cashier job qualified as past relevant work. (Doc. 12 at 12). It is true ALJ Weaver relied on these things, (tr. 24), but neither supports that Etherton's cashier job was performed at SGA levels.

15

In fact, the VE's testimony was entirely derived from Etherton's self-reported work history.[8] The VE testified Etherton's report indicated Etherton was working forty hours per week; in response ALJ Weaver pointed specifically to "Page 5E, Page 7." (Tr. 54-55). However, the cited page indicates that Etherton worked eight hours per day, <u>three to five days per week</u>. (Tr. 201). Additionally, Etherton testified she did not work full time at Dollar General, (tr. 48), and the VE acknowledged "[i]f she said that today, I wouldn't disagree." (Tr. 55). Both ALJ Weaver and the VE then stated "the paperwork" Etherton filled out contradicted her testimony. (*Id.*). As noted above, this is inaccurate, because the work history report does not unequivocally support Etherton worked full-time.

Faced with, at best, ambiguous evidence as to whether Etherton worked full-time at Dollar General, ALJ Weaver did nothing to determine whether Etherton's monthly earnings met the guidelines for SGA. Instead, she founded her conclusion on a misinterpretation of the evidence. There is no evidence in the record to support ALJ Weaver considered any other factor besides Etherton's self-report to conclude her cashier work was SGA. Consequently, the undersigned must conclude ALJ Weaver's decision was not supported by substantial evidence. Because the ALJ found Etherton was not disabled due to her ability to perform her past relevant work as a cashier, this was reversible error. *See Henderson v. Colvin*, No. CV 14-00454-B, 2016 WL 1175261, at *6 (S.D. Ala. Mar. 24, 2016) (finding reversible error and remanding when ALJ failed to discuss any evidence that would rebut the presumption of no SGA from claimant's alleged past work); *Perez v. Comm'r of Soc. Sec.*, No. 8:15-CV-2064-T-JSS, 2016 WL 4361930, at *5 (M.D. Fla. Aug.

---

[8] The parties dispute whether ALJ Weaver properly relied on the VE's testimony for the proposition Etherton's cashier work was performed at SGA, but this is immaterial in light of the fact the only evidence supporting the VE's testimony was Etherton's work history report.

16, 2016) (reversible error when ALJ found claimant had past relevant work, but did not account for conflicting evidence that the work had not been performed at SGA). This action is due to be remanded for the Commissioner to consider whether Etherton's cashier work was SGA.

As discussed above, Etherton's allegations of bias are insufficient to support reversal on that basis alone. Although the undersigned will not direct the Commissioner to assign the claim to a different ALJ on remand, she should consider doing so to the extent she believes the goals of the Social Security Act would be furthered by reassignment.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Etherton's claim for a period of disability, SSI, and DIB is **REVERSED** and the action is **REMANDED** for proceedings consistent with this opinion.

DONE this 24th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE